CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/19/2026
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| JONATHAN BUSS & KARISSA BUSS, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF C.B., A MINOR CHILD, *Plaintiffs,* v. CENTRA HEALTH, INC., CITY OF LYNCHBURG, ET AL., *Defendants.* | CASE NO. 6:26-CV-00035 **MEMORANDUM OPINION** JUDGE NORMAN K. MOON |

Plaintiffs Jonathan ("Mr. Buss") and Karissa Buss ("Mrs. Buss") (jointly, the "Plaintiffs") bring a "civil rights, medical malpractice, and tort action" arising from conduct that occurred in February and March 2026. Dkt. 22. Plaintiffs allege Centra Heath, Inc. ("Centra"); the City of Lynchburg (the "City"); several Lynchburg police officers;[1] and several Centra security personnel[2] violated their constitutional and statutory rights. *Id.* Both Centra and the City move to dismiss the claims against them. Dkts. 25, 28. For the following reasons, the Court will grant the motions.

[1] The City consented to waive service for the officers sued in their individual capacities. Dkt. 37. The officers included in the complaint are Officer Jamal Payne ("Payne"); Officer Kimberly Brown ("Brown"); Officer Christopher Wilson ("Wilson"); Officer Carson Potter ("Potter"); and Former Sergeant Stephen Rippy ("Rippy").

[2] The Centra security personnel included in the complaint are Officer Christopher W. Brooks ('Brooks"), Michael N. Fugate ("Fugate"), Officer Tiara Garner ("Garner"), Lieutenant Walter E. Jackson ("Jackson"), Officer Danielle M. Jones ("Jones"), Officer Gabriel J. Killala ("Killala"), Officer Abigail Lokkesmoe ("Lokkesmoe"), Officer Hunter Mitchell ("Mitchell"), and Officer Rudolph T. Tidwell ("Tidwell"). Dkt. 38.

## BACKGROUND[3]

Mrs. Buss "was admitted to [Virginia Baptist Hospital]" "[o]n February 5, 2026" "to be induced for labor due to mild pre eclampsia (sic)." Dkt. 22 ¶ 8. Her husband, Mr. Buss, came with her for their child's birth. Mr. Buss is "legally Deaf due to Neurofibromatosis type 2." *Id.* ¶ 3.

Before the child was born, Mr. Buss attempted to "retriev[e] items from his vehicle" but was "grabbed by a Centra door attendant known as Mike" who began "grabbing and pushing" Mr. Buss. Dkt. 22 ¶ 9. Mike had issued "verbal commands" that, due to Mr. Buss' Deafness, he could not hear. *Id.* Mr. Buss "pushed back out of natural reflex," and Mike "ran away." *Id.* After this encounter, Mr. Buss "immediately informed [hospital] nursing staff of the incident and explicitly placed them on notice of his Deafness." *Id.*

The "nursing staff[,] specifically Nurses Kelley, Shelley, and Carrey" [4] began "refusing to honor the Plaintiffs' birth plan" and "refusing to establish a Durable Power of Attorney," which Plaintiffs allege created a "hostile environment." Dkt. 22 ¶¶ 10-11. Because of this alleged mistreatment, "Plaintiffs initiated a discharge Against Medical Advice" on February 7, 2026 when Mrs. Buss was "eight hours postpartum." *Id.* ¶ 11. Once an "attending physician . . . officially cleared [Mrs. Buss and C.B.] to leave the facility," Plaintiffs began to gather their items and return home. *Id.*

On their way out the door, however, "a female Centra security officer intercepted them" and "physically assaulted [Mr. Buss]." Dkt. 22 ¶ 12. Plaintiffs again "explicitly informed the

---

3 Plaintiffs previously petitioned the Court for leave to file a third amended complaint to include the names of previously unknown parties. Dkt. 39. The Court construed the motion as a motion to substitute parties and granted it. Dkt. 41. The Court also established that the amended complaint, Dkt. 22, remained the operative pleading. *Id.*

4 None of these nurses are named as defendants in this action.

security guard and arriving LPD officers that [Mr. Buss] [was] Deaf and [could not] hear commands at normal volumes." *Id.* Although LPD officers "explicitly cleared the Plaintiffs to leave the hospital," Centra Health personnel "maliciously triggered" a "Code Adam alarm" despite "possess[ing] actual knowledge that no abduction was occurring." *Id.* ¶ 14.[5] Based on this Code Adam, LPD officers "conducted a high risk (sic) traffic stop on Plaintiffs," including "deploy[ing] spike strips;" "extracting [Mr. Buss];" and "utiliz[ing] excessive physical force by grabbing him." *Id.* ¶¶ 15-16.

During this traffic stop, Plaintiffs allege that "LPD officers explicitly threatened [Mrs. Buss] with immediate arrest and jail for kidnapping if she did not get into the ambulance." Dkt. 22 ¶ 17. Mrs. Buss, and the newborn child C.B., "were forced into an ambulance and transported back to VBH" where they were "detained under guard for approximately five hours" and were "physically prevented from leaving" by Centra employees. *Id.* ¶¶ 17-18.

After Mrs. Buss was released, Centra "maliciously issued a retaliatory and permanent trespass notice" against Mr. Buss. Dkt. 22 ¶ 19. This notice "explicitly ban[ned]" him from "all Centra properties regionally." *Id.* Plaintiffs allege Centra issued the notice "as direct retaliation for exercising a lawful discharge." *Id.*

On two occasions since, Mr. Buss alleges having experienced difficulties with this ban. First, on February, 8, 2026 (the day after the incidents described above), Plaintiffs took C.B. into a Centra facility for "severe, life threatening (sic) jaundice" but Centra "refused to provide [C.B.] medical treatment" unless Mr. Buss left the facility. Dkt. 22 ¶¶ 20-23.[6] Second, on March 31,

---

[5] According to the amended complaint, a Code Adam alarm is a protocol "strictly reserved for infant abductions." Dkt. 22 ¶ 14.

[6] Plaintiffs allege C.B. later received treatment at the University of Virginia where she was "immediately admitted for a four day (sic) inpatient stay to stabilize her critical condition." Dkt. 22 ¶ 23.

2026, Plaintiffs "presented to the Emergency Room at Centra" but Centra "remove[d] [Mr. Buss] from the premises, forcing him to leave his wife while she received care." *Id.* ¶ 24.

Plaintiffs allege "catastrophic and severe emotional distress" following these events, including "severe depression and debilitating PTSD, possessing an extreme fear of hospitals and law enforcement." Dkt. 22 ¶ 25. And further, because Centra has a "regional medical monopoly," Mr. Buss alleges he has "completely ceased seeking necessary medical treatments for his Neurofibromatosis type 2 condition." *Id.*

Plaintiffs bring an excessive force and unlawful seizure claim against the City and several individual officers. Dkt. 22 ¶¶ 26-27. They also bring claims alleging false imprisonment;[7] a violation of the Emergency Medical Treatment & Labor Act ("EMTALA"); a violation of the Americans with Disabilities Act ("ADA"); and intentional infliction of emotional distress against Centra. *Id.* at 4.

## <u>Legal Standard</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has stated a claim such that the court can grant relief. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion; however, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Plaintiff's allegations must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor during 12(b)(6) motions to dismiss. *King v.*

[7] Plaintiffs also bring their false imprisonment claim against Jones, Jackson, Killala, Mitchell, Tidwell, Brooks, Garner, Lokkesmoe, and Fugate. Dkt. 22 ¶ 28.

*Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Additionally, a court must construe the filings of *pro se* plaintiffs liberally, and *pro se* complaints "however inartfully pleaded, must be held to less stringent standards" than those prepared by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## Analysis

### A. Plaintiffs Fail to State a Federal Claim

*1. § 1983 Claim against the City and Officers*

Under the Fourth Amendment, individuals are protected from unlawful seizures, including "seizures effectuated by excessive force." *See* U.S. Const. amend. IV; *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). 42 U.S.C. § 1983 provides a vehicle for plaintiffs to remedy Fourth Amendment violations. This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Plaintiffs seek § 1983 relief, arguing the City and Officers Payne, Brown, Wilson, Potter, and Rippy violated their rights by (1) employing excessive force against Mr. Buss during the "high risk traffic stop," and (2) executing an unlawful seizure against Mrs. Buss by "threatening her with jail to force her into an ambulance against her will." Dkt. 22 ¶¶ 26, 27.

*a.* Monell *Claim*

§ 1983 establishes that a municipality is a "person" and may be held independently liable when the municipality's acts "may fairly be said to represent official policy" and "inflict[] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Single instances of conduct, however, are insufficient to establish *Monell* liability. *See Johnson v. Baltimore City*, 163 F.4th 808, 823 (4th

Cir. 2026) ("As noted, we have previously held [one specific instance of conduct] insufficient to support a reasonable inference that there is a 'persistent and widespread practice' so as to plausibly allege a *Monell* claim."); *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) ("Sporadic or isolated violations of rights will not give rise to *Monell* liability.").

Plaintiffs allege the City is liable for the individual officers' conduct due to its "repeated systemic failure" to "adequately train its officers on proper ADA accommodations for Deaf citizens." Dkt. 22 ¶ 27. According to Plaintiffs, this failure to train "represents an official custom and policy of the City" and "directly result[s] in . . . constitutional violations." Dkt. 22 ¶ 27. Yet, in support of this claim, Plaintiffs rely solely on their allegations from February 2026—failing to allege ***any*** other instances where the City failed to train its officers for interactions with Deaf citizens. As this is a single instance of conduct, Plaintiffs fail to state a claim against the City.

*b. Excessive Force Claim*

Under the Fourth Amendment, officers may only use reasonable force. When assessing reasonableness, courts consider (1) the "severity of the crime" that is subject to the stop, (2) "whether the suspect poses an immediate threat to the safety of the officer or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Benton v. Layton*, 139 F.4th 281, 289 (4th Cir. 2025). Courts determine the reasonableness of force by considering "the totality of the circumstances" "from the perspective of a reasonable officer on the scene." *Aleman v. City of Charlotte*, 80 F.4th 264, 285 (4th Cir. 2023); *Graham*, 490 U.S. at 396.

Here, Mr. Buss alleges Lynchburg police officers, acting on the "false Code Adam report initiated by Centra," "deployed spike strips in front of the family vehicle" and used "excessive

physical force by grabbing him which resulted in visible bruising to his forearms." Dkt. 22 ¶ 16. Under the *Graham* factors, these allegations do not state a claim for excessive force.

Consider the "severity of the crime." *Graham*, 490 U.S. at 396. Mr. Buss alleges the officers responded to an infant abduction report (Code Adam) from Centra. Dkt. 22 ¶ 14-16. He does not, however, allege officers knew that the Code Adam was false. Under Virginia law, kidnapping of a minor is a serious crime.[8] Va. Code § 18.2-47. Because Mr. Buss does not allege the officers knew the Code Adam was false, and because kidnapping is a severe crime that indicates an individual is potentially dangerous, this factor weighs in favor of the officers.

Plaintiffs' complaint alleges insufficient facts for the Court to conclude they did not "pose an immediate threat to the safety of the officer[s]." *Graham*, 490 U.S. at 396. Plaintiffs alleges they was "one minute down the road from the VBH campus" when officers "deployed spike strips" to stop the car. Dkt. 22 ¶¶ 15-16. Mr. Buss does not allege how quickly he fled the hospital; if he was evading officers; or if he was complying with instructions. He does not allege how many officers pursued him, the body sizes of those officers in comparison to him, or if he was making any threats toward the officers. Although the Court takes the allegations in the complaint as true, there simply are not enough allegations for the Court to find this factor weighs in Mr. Buss' favor.

Plaintiffs likewise fail to allege sufficient facts to allow the Court to conclude they were not "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. His conclusory allegations that officers used "extracted him from the vehicle" and used "excessive physical force" that resulted in "visible bruising to his forearms" are insufficient to allege he was not evading arrest. Dkt. 22 ¶¶ 15-16.

---

[8] Depending on the relationship with the minor, kidnapping is, at minimum, a Class 1 misdemeanor, and at maximum, a Class 2 felony. Va. Code § 18.2-47.

Because an officer pursuing someone leaving the scene of a suspected kidnapping could reasonably believe that person be dangerous, and because Buss offers no further allegations as to his (or the officers') conduct during incident, the Court cannot conclude the officers employed excessive force.

*c. Unlawful Seizure Claim*

Under the Fourth Amendment, "a seizure occurs . . . when physical force is applied or when a person submits to an official show of authority." *Cruden v. Brinkley*, 1999 WL 152597, at *3 (4th Cir. Mar. 22, 1999) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A seizure is considered unreasonable when it is "effected without probable cause." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). As Mrs. Buss "submit[ted] to an official show of authority" by entering the ambulance, the question here is whether officers had probable cause to seize her.

Probable cause is "evaluated under an objective standard, based on what a prudent officer would have believed under the circumstances." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). If "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense," an officer has probable cause to perform a seizure. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (collecting cases).

Plaintiffs allege the officers performing the "high risk traffic stop" who later seized Mrs. Buss were "[a]cting on the false Code Adam report initiated by Centra Health." Dkt. 22 ¶ 15. Plaintiffs allege they were "cleared . . . to leave the hospital premises" by LPD officers who responded to an altercation between Mr. Buss and a "female Centra Security officer," but fails to allege the same officers were responsible for the "high risk traffic stop" (or that the officers who

knew the Busses were cleared to leave had communicated that information to those performing the traffic stop). *Id.* ¶¶ 12-13.

Without allegations that the officers knew the Code Adam to be false (or that they knew the Busses had been cleared to leave the hospital), the Court cannot conclude their decision to seize Mrs. Buss and return her to the hospital was unreasonable. A Code Adam, as discussed above, is called for "infant abduction" and creates a reasonable belief that Plaintiffs "committed, [were] committing, or [were] about to commit an offense." *DeFillippo*, 443 U.S. at 37; Dkt. 22 ¶ 14. Therefore, based on the amended complaint's allegations, the officers had probable cause to seize Mrs. Buss, and the seizure was not unreasonable.

As the allegations in the complaint do not establish that the individual officers either used excessive force or unreasonably seized Mrs. Buss, the Court will grant the City's motion to dismiss.

*2. EMTALA Violation against Centra*

Plaintiffs allege Centra violated EMTALA on "February 8, 2026" because it "explicitly refused to provide medical treatment" for C.B.'s "severe, life threatening (sic) jaundice" "citing the retaliatory trespass notice issued against [Mr. Buss]." Dkt. 22 ¶¶ 20-21. This allegation fails to state an EMTALA claim.

To state a claim under EMTALA, Plaintiffs must allege either (1) that an emergency department failed to provide "an appropriate medical screening examination," or (2) that an emergency department failed to provide "such treatment as may be required to stabilize" a medical condition discovered during screening. 42 U.S.C. § 1395dd. Congress enacted EMTALA because "states generally had not made tort remedies available for the refusal to provide emergence care."

*See Williams v. United States*, 242 F.3d 169, 177 (4th Cir. 2001) (citing *Bryan v. Univ. of Va.*, 95 F.3d 349, 351 (4th Cir. 1996)).

Even construing these allegations broadly and viewing them in the light most favorable to Plaintiffs, they do not state that Centra refused to treat C.B.—merely that Centra had a "permanent trespass notice" against Mr. Buss due to his disruptive behavior on February 7.[9] Dkt. 22 ¶ 19. As such, Plaintiffs fail to state an EMTALA claim against Centra, and the Court will dismiss it.

*3. ADA Violation against Centra*[10]

Mr. Buss also alleges Centra "discriminated against" him by "failing to provide reasonable accommodations for his Deafness," such as "alternative communication methods." Dkt. 22 ¶ 30. He alleges "this failure directly resulted in unprovoked physical assaults by Centra door attendant Mike and the female Centra security officer." *Id.* These allegations fail to state an ADA claim.

Title III of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities. . . of any place of public accommodation," including a "hospital." 42 U.S.C. §§ 12182(a); 12181(7)(F). To plead a Title III violation, a plaintiff must allege: "(1) he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability." *J.D. ex rel. Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669-70 (4th Cir. 2019). Places of public accommodation cannot be liable for discrimination unless they know about a plaintiff's disability. *See Seremeth v.*

---

9 EMTALA requires hospitals to treat patients even if those patients are trespassing on hospital property. Yet here, Mr. Buss was not the patient—C.B. was. And further, Mrs. Buss was also with Mr. Buss, meaning Mrs. Buss could have consented to and participated in C.B.'s jaundice treatment as required even without Mr. Buss' presence.

10 Mr. Buss does not bring this claim against any of the Centra security personnel.

*Bd. of Cnty Comm'rs*, 673 F.3d 333, 336 (4th Cir. 2012) (defining discrimination as "not making reasonable accommodations to the ***known*** physical or mental limitations of an otherwise qualified individual with a disability.") (emphasis added).

Mr. Buss alleges two incidents make Centra liable for disability discrimination: (1) Mike "grab[bed] and push[ed] him" because "he could not hear [Mike's] verbal commands" and (2) that a female security officer "intercepted" him "while [he was] walking to [his] vehicle," and "physically assaulted [him]." Dkt. 22 ¶¶ 9, 12. Neither allegation states an ADA discrimination claim.

According to Mr. Buss' allegations, the parties did not know he was Deaf before physically intervening as he told them about his disability after both altercations. Dkt. 22 ¶¶ 9, 12. And further, although Mr. Buss allegedly told "VBH nursing staff" and the "female security officer" about his disability, Mr. Buss did not allege he ever told a party who "owns, leases, or operates" Centra about his Deafness or that he ever requested an accommodation. 42 U.S.C. §§ 12182(a). Without knowledge of either his disability or his requested accommodations, Centra could not have "discriminated against [Mr. Buss] because of his disability." *J.D. ex rel. Doherty*, 925 F.3d at 669-70; *Seremeth*, 673 F.3d at 336. The Court will dismiss this claim.

**B. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims**

Federal courts are courts of limited jurisdiction and may only hear cases or controversies that (1) present a federal question or (2) are brought by completely diverse parties. 28 U.S.C. §§ 1331-32. A district court may hear related state law claims if they are "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy" through supplemental jurisdiction. *Id.* § 1367. But a federal court "may decline to exercise

supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." *Id.*

Plaintiffs' claims under § 1983, EMTALA, and ADA claims arose under federal law, granting the Court jurisdiction to hear them. But the Court lacks original jurisdiction over Plaintiffs' false imprisonment and intentional infliction of emotional distress claims as they arise under Virginia common law. Since "the district court has dismissed all claims over which it has original jurisdiction," the Court declines to exercise supplemental jurisdiction over the remaining state common law claims and will dismiss them without prejudice. 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, the Court will grant both the City's and Centra' motions to dismiss. Dkts. 25, 28.

A separate order will issue.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 19th day of August, 2026.

Norman K. Moon

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE